

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2009

# USA v. Little

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4788

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Little" (2009). *2009 Decisions*. Paper 1943.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1943

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4788

UNITED STATES OF AMERICA

v.

RONALD LITTLE,
                                  Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 06-cr-00644)
District Judge:  The Honorable Mary A. McLaughlin

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2009

Before: SLOVITER, BARRY, and SILER, JR.,[*] Circuit Judges

(Opinion Filed:February 2, 2009)

OPINION

_____

[*]  The Honorable Eugene E. Siler, Jr., Senior Circuit Judge, United States Court of
Appeals for the Sixth Circuit, sitting by designation.

BARRY, <u>Circuit Judge</u>

Ronald Little pled guilty to one count of possessing fifteen or more unauthorized access devices, one count of causing the production and trafficking in counterfeit access devices, and one count of aggravated identity theft. He was sentenced to a term of imprisonment of ninety-four months and ordered to pay restitution in the amount of $67,357.51. He now appeals. For the reasons that follow, we will affirm.

**I.**

In late September 2005, Little stole two rolls of credit card receipts from a gas station in Palmerton, Pennsylvania. The rolls of receipts contained credit and debit card numbers used to make purchases at the gas station from September 13, 2005 to September 16, 2005, and from September 19, 2005 to September 22, 2005. Little gave the rolls to a friend, who gave them to another friend, who in turn gave them to Brian Lee Morgan. Morgan used the information on the receipts to make counterfeit credit and debit cards. As payment for his efforts, Little received several fraudulent credit cards in the name "R. Little," which he used to buy $763.40 worth of goods.

The other credit and debit cards made using the information from the rolls of receipts yielded far more extensive fraudulent purchases. The rolls contained approximately 886 account numbers. In an effort to determine whether any of the credit and debit card accounts suffered losses, Secret Service Special Agent Kelly Fincher identified the banks that issued each of the credit and debit card numbers on the stolen

rolls and contacted the fraud investigators at each of the banks. The fraud investigators orally reported losses of $154,369.15. Fincher requested documentation from the banks to support the reported losses. The banks provided error resolution reports, victim affidavits, police reports, and other computerized bank records. The documentation supported only $67,357.51 in losses.[1]

## II.

On April 12, 2007, a grand jury sitting in the Eastern District of Pennsylvania returned a four count superseding indictment charging Little with one count of possessing fifteen or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3); one count of causing the production of and trafficking in counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(1); and two counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. On August 27, 2007 – the eve of trial – Little moved to dismiss one of the aggravated identity theft counts for lack of venue. The District Court granted the motion, and Little proceeded to plead guilty to the remaining three counts without a plea agreement.

At sentencing, the District Court adopted the Sentencing Guideline range recommended in the Presentence Report.[2] The Court grouped the two 18 U.S.C. § 1029(a) counts, pursuant to U.S.S.G. § 3D1.2(d). The third count – aggravated identity

---

[1] That amount included the $763.40 spent by Little.

[2] The Presentence Report was prepared using the 2006 United States Sentencing Guidelines Manual.

theft – could not be grouped because 18 U.S.C. § 1028A(a)(1) mandates a consecutive sentence of twenty-four months. The grouped offenses yielded a base offense level of six, pursuant to U.S.S.G. § 2B1.1. Guideline § 2B1.1(b)(1) instructs the Court to increase the offense level according to the amount of any consequential loss from the offense. However, "[i]n a case involving any counterfeit access device or unauthorized access device," such as this case, the loss "*shall not be less than* $ 500 per access device." *Id.* at § 2B1.1 cmt. n. 3(F)(i) (emphasis added). Because approximately 886 credit and debit cards were involved here, each with a minimum loss of $500, the resultant loss was greater than $400,000, and the offense level was thus increased by fourteen. *Id.* at § 2B1.1(b)(1)(H). Because there were more than ten victims, the offense level was increased by two, *see id.* at § 2B1.1(b)(2)(A), although that increase was offset by a two-level acceptance of responsibility reduction pursuant to § 3E1.1(a). The government did not move for an additional reduction pursuant to § 3E1.1(b) because Little waited until the eve of trial to plead guilty.

The total offense level for the grouped counts, therefore, was twenty which, when considered with Little's criminal history category of VI, resulted in a Guideline range of seventy to eighty-seven months. The mandatory twenty-four month consecutive sentence for aggravated identity theft resulted in an adjusted Guideline range of ninety-four to 111 months.

Little was also subject to mandatory restitution pursuant to 18 U.S.C. § 3663A, in

an amount to be determined by the District Court at sentencing. *Id.* at § 3664(e); *see*

*United States v. Leahy*, 438 F.3d 328, 331 (3d Cir. 2006) (en banc) ("the amount a

defendant must restore to his or her victim need not be admitted by the defendant or

proved to a jury beyond a reasonable doubt").  The government called Fincher to testify

as to how she calculated the losses caused by Little.  She stated that she organized the

credit and debit cards by the bank from which they were issued, and then contacted the

fraud investigators at each bank to inquire about the relevant account numbers.  The fraud

investigators orally reported losses totalling $154,369.15, of which $67,357.51 was

documented.

Little objected to Fincher's testimony contending that it was improper for her to

testify to the contents of bank records and victims' reports, and asserting that her

testimony was unreliable hearsay.  Little argued that bank employees must authenticate

their records and explain their policies regarding reliance on police and victim reports in

documenting fraud.  The District Court disagreed and overruled Little's objection.  The

Court, however, only credited documented loss.

As noted at the outset, the District Court imposed a sentence of ninety-four months

imprisonment, and ordered restitution in the amount of $67,357.51.

### III.

On appeal, Little renews his objection to Fincher's testimony and to the bank

records admitted into evidence at the sentencing hearing.[3]

The admissibility of hearsay at sentencing is a question of law, and is subject to plenary review. *See United States v. Brothers*, 75 F.3d 845, 848 (3d Cir. 1996). "The admission of hearsay statements in the sentencing context is subject to the requirements of the Due Process Clause." *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007).[4] "Under the precedent of this Court, hearsay statements must have some 'minimal indicum of reliability beyond mere allegation.'" *Id.* (quoting *United States v. Kikumura*, 918 F.2d 1084, 1102 (3d Cir. 1990), overruled on other grounds by *United States v. Grier*, 449 F.3d 558 (3d Cir. 2006)).

We are thus presented with the question of whether the government's evidence of loss, which it introduced to establish the amount of restitution, bore "sufficient indicia of reliability." *United States v. Brigman*, 350 F.3d 310, 315 (3d Cir. 2003). Fincher testified that fraud investigators at the banks involved provided documents in the form of bank records; victim statements, including affidavits and letters, often supported with

---

[3] We have jurisdiction over the appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

[4] This holds true even in the wake of *Crawford v. Washington*, 541 U.S. 36 (2004). As we stated in *Robinson*, post-*Crawford*, "[t]he law on this issue is well settled . . . the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." 482 F. 3d at 246; *see also United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005) ("the relevant provision at sentencing is the [D]ue [P]rocess [C]lause, not the [C]onfrontation [C]lause . . . witnesses providing information to the court after guilt is established are not accusers within the meaning of the [C]onfrontation [C]lause").

credit card bills with unauthorized charges circled or highlighted; and police reports. Those records are of the type routinely relied upon by banks in determining whether or not to bill credit card holders for allegedly fraudulent charges made using their cards. We have found similar evidence to be sufficiently reliable. *See, e.g., United States v. Leekins*, 493 F.3d 143, 149-50 (3d Cir. 2007) (admitting at sentencing unverified police report even though officers who prepared the report did not testify at hearing); *United States v. Paulino*, 996 F.2d 1541, 1548 (3d Cir. 1993) (holding that special agent's testimony regarding discussions with a confidential informant met "the standard of minimum indicia of reliability"). The Eleventh Circuit, faced with similar facts, concluded that a letter from a bank's attorney specifying the amount of bank fraud was sufficiently reliable, even absent his testimony. *United States v. Hairston*, 888 F.2d 1349, 1353 (11th Cir. 1989). We similarly conclude that "the evidence offered by the government through the testimony of [Fincher] easily passes" the minimal indicia of reliability threshold. *Robinson*, 482 F.3d at 246.

Little's counsel also argues, but only at Little's request, that Little was entitled to a one-level reduction pursuant to § 3E1.1(b). This argument is entirely without merit. Guideline § 3E1.1(b) states that an additional one-level reduction for timely notifying the government of intent to plead guilty may be granted only "upon motion of the government." *See id.* at cmt. n. 6 ("Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids

preparing for trial, an adjustment . . . may only be granted upon a formal motion by the Government at the time of sentencing"). No such motion was made here, nor was one called for, given that Little did not plead guilty until the eve of trial. "Accordingly, the absence of a government motion left the District Court powerless to grant the adjustment . . . under § 3E1.1(b)." *United States v. Drennon*, 516 F.3d 160, 162 (3d Cir. 2008).[5]

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.

---

[5] As we stated in *Drennon*, the government's broad discretion to decline to file a § 3E1.1(b) motion is not unlimited. 516 F.3d at 162. The government is "subject, of course, to constitutional restraints," and may not base its decision on the defendant's race, religion, or gender. *Id.* It did not do so here.