**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0133n.06

**No. 07-6495**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Mar 01, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| TARNISHA T. WOODS, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |

Before: RYAN, COOK and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Tarnisha Woods ("Woods") pled guilty of possession of the identity of another with the intent to commit bank fraud, in violation 18 U.S.C. §§ 1344 & 1028(a)(7), after being indicted for a series of completed or intended fraudulent credit-card and check transactions facilitated by obtaining victims' mail and assuming their identities. The district court, on reviewing the Presentence Investigation Report ("PSR") prepared by the Probation Office, ordered that restitution be paid in the amount of the loss to the victims. However, because actual loss amounts for individual victims were not ascertainable at the time of the sentencing hearing, the district court allowed for an extra ninety days from the entry of judgment for entry of the final restitution order. The district court also ordered that any portion of the actual loss amount not paid in restitution would be converted to a fine at the conclusion of the ninety days. Because no claims for restitution were filed in the ninety-day period, the full amount of the actual loss became

a fine. That fine exceeded the Sentencing Guidelines' suggested range by $436.08. The district court also imposed an above-Guidelines term of incarceration. On appeal, Woods makes multiple claims of error, both procedural and substantive, challenging the restitution award, fine and sentence. We affirm.

## I. Background

On December 19, 2006, Memphis police officers were monitoring an address where several mail thefts had occurred. The officers observed a vehicle similar to one described in earlier reports pull up to the address's mailbox, and then pull away. The officers conducted a traffic stop of the vehicle and observed, in plain view, several pieces of mail belonging to Michele Less, and approximately 20 other persons. Woods, the driver, and her half-sister, Andrea Johnson ("Johnson"), the passenger, were taken into custody.

At the time of their arrest, Woods was in possession of unused credit cards in victims' names and a fraudulent check made payable to her (Woods). Johnson was in possession of four counterfeit credit cards. During the subsequent investigation, officers discovered that between May 2006 and December 2006, Woods and Johnson used stolen mail to obtain credit cards, checks and identification in a number of victims' names, which were then used in attempted financial transactions totaling $44,178.22[1], leading to $30,436.08 in actual losses.

---

[1]This figure included two assessments of $500 for two counterfeit credit cards the women possessed but had not used pursuant to U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(F)(i) (2009), $742.96 for counterfeit checks the women had in their possession, and attempted, but unsuccessful, purchases of $11,999.18 on one of the credit cards.

On December 20, 2006, a federal grand jury indicted Woods and Johnson for (1) violating 18 U.S.C. §1708 (1994) in that they "being aided, abetted, counseled and induced by each other, did receive, conceal, and unlawfully have in their possession over thirty (30) letters, mail, and articles contained therein which had been stolen, taken, and embezzled from a mail route and mail carrier, then knowing the articles to have been stolen, taken, and embezzled . . ." and (2) violating 18 U.S.C. § 1028(a)(7) (2006) in that they "in a manner affecting interstate commerce, did knowingly possess, without lawful authority, a means of identification of another to wit: the counterfeit driver's license of Michele Less with the intent to commit, any unlawful activity that constitutes a felony violation of Federal law to wit: violations of Title 18, United States Code, Section 1344, that is Bank Fraud . . . ."

Woods entered into a Plea Agreement ("Agreement") that provided that she would plead guilty to Count Two of the Indictment, and that Count One would be dismissed. The Agreement also stated:

> The Sentencing Guidelines, which establish the penalty range, will be computed on the total amount of relevant conduct. The parties agree that the total amount of relevant conduct and any other sentencing enhancements will be determined by the sentencing court utilizing a preponderance of the evidence standard of review.
> Any restitution ordered by the Court will be based on the total amount of relevant conduct.

The PSR calculated Woods' offense level at twelve and detailed three juvenile convictions and twenty-three adult convictions in Woods' criminal history record, resulting in a criminal history

- 3 -

score of twenty.[2]  This gave Woods a criminal history category of VI.[3]  The PSR also listed seven

pending charges and ten "Other Arrests" that did not result in convictions.  Woods' resulting

Guideline Range was thirty to thirty-seven months of imprisonment, supervised release of two to

three years, and a fine of between $3,000 and $30,000.

On November 29, 2007, the district court conducted a sentencing hearing, addressing the

factors it was considering in setting Woods' sentence.  These factors included "the offense conduct

itself," the impact of identity theft on society and individuals, Woods' "history and characteristics"

noting that there was a "substantial history" and that there were "a lot of points that could not be

counted," and Woods' criminal history point count.  The court also opined that the lack of

appropriate punishment in response to previous crimes had led to "[i]ngrained behavior that has not

been dealt with," observed that as Woods' offenses continued there was "a serious problem and

we're still not getting it addressed," and that her history indicated that she was progressively

involved in "more and more, bigger and bigger ticket items in the sense of the now forged checks

---

[2]Woods criminal history score subtotal due to her prior convictions was thirty.  However, the PSR reduced that to seventeen because U.S. Sentencing Guidelines Manual § 4A1.1(c) (2009) only allows a maximum of four points to be accumulated under that provision.  The PSR then increased the score by two points because Woods was on probation at the time she committed the instant offense, and by an additional point because it had been less than two years since the defendant had been released from imprisonment.  U.S. Sentencing Guidelines Manual §§ 4A1.1(d), (e) (2009).

[3]U.S. Sentencing Guidelines Manual ch. 5, pt. A (2009) (thirteen or more criminal history points establishes a Criminal History Category of VI).

and that sort of activity." Finally, the court analyzed what needed to be done "to meet the objectives of 18 U.S.C. Section 3553," to protect the public and to provide adequate deterrence.

The district court opted for the actual loss amount of $30,436.08 as restitution, with the victim list left open for ninety days. The court further provided that any amount of restitution left unpaid at the end of the ninety days would be converted into a fine so that Woods would not benefit financially from her crimes. The district court explained to Woods the operation of the restitution and fine amounts:

> You would be required to pay 10 percent of gross income toward the reduction of first your restitution and then your fine amount. The fine amount, of course, would not exceed $30,436.08, and, of course, every dollar that goes to restitution will be reduced from the fine amount.

Woods' only objection to the sentence in the district court was to the court's upward departure from the Guidelines incarceration range.

The district court entered judgment on December 3, 2007, sentencing Woods to fifty-one months of imprisonment and three years of supervised release. Under a section of the Judgment titled "Criminal Monetary Penalties," the district court left blank the area under the title "Total Fine" and wrote "$30,436.08" under the title "Total Restitution." Then, under a sub-section entitled "FINE" the district court wrote "No fine imposed." The district court put an asterisk next to a second sub-section entitled "RESTITUTION," below which the court wrote:

> *Restitution shall be paid to any victims identified within 90 days of the entry of this Judgment. Any balance of unclaimed monies shall be paid as a fine in this case.

The Judgment also included a "Schedule of Payments" for the monetary penalties, stating that the district court, "[h]aving assessed the defendant's ability to pay" orders that "[t]he defendant shall pay restitution in regular monthly installments of not less than 10% of gross monthly income." The district court also waived the interest required on the monetary penalty under 18 U.S.C. § 3612(f) (2002).

## II. Analysis

### A. The District Court Correctly Calculated Relevant Conduct for Sentencing

Woods argues that the district court committed error by including in its sentence calculation monetary loss amounts that are not connected to the crime of conviction. Woods claims that the credit and debit card and fraudulent check activities that resulted in the monetary losses do not qualify as "relevant conduct" for Sentencing Guidelines purposes in determining her sentence for the offense of possession of a counterfeit driver's license with the intent to commit bank fraud. Because Woods did not object to the district court's determination regarding relevant conduct, we review this claim for plain error. *See United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006) (holding that if no objection is made at sentencing hearing on an issue, that objection is subject to plain error review on appeal).

Plain error is:

> (1) error (2) that "was obvious or clear," (3) that "affected defendant's substantial rights" and (4) that "affected the fairness, integrity, or public reputation of the judicial proceedings."

*United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

U.S. Sentencing Guidelines Manual § 1B1.3(a)(2)(2004) states that the specific offense characteristics "shall be determined on the basis of . . . all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."[4] "Relevant conduct is not limited to conduct for which the defendant has been convicted." *United States v. Maken*, 510 F.3d 654, 658 (6th Cir. 2007) (citing *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994) (conduct that cannot be prosecuted because of statutes of limitation or acquittal can be used to determine relevant conduct)). In *United States v. Koeberlein*, 161 F.3d 946 (6th Cir. 1998), this Court discussed how to assess relevant conduct:

> To qualify as part of a "common scheme or plan" under the "relevant conduct" guideline, the offenses "must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." If offenses do not qualify as part of a common scheme or plan, offenses are nonetheless considered the "same course of conduct" if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." The three factors relevant to determining whether offenses are sufficiently related to constitute the "same course of conduct" include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." The commentary requires courts to balance these factors such that "when one of [these] factors is absent, a stronger presence of at least one of the other factors is required."

---

[4]U.S. Sentencing Guidelines Manual § 3D1.2(d) (2007) lists § 2B1.1 crimes as offenses covered by § 1B1.3(a)(2).

*Id.* at 950 (quoting *United States v. Hill,* 79 F.3d 1477 (6th Cir. 1996)).

In *Koeberlein*, this Court held that even assuming satisfaction of the first three prongs of plain error review, an appellant cannot meet her burden on the fourth prong where "[t]he relevant conduct, while not a mirror image of the offense of conviction, shares many of its traits" and where "defendant was provided with a report prior to sentencing that contained the relevant conduct analysis, giving him ample opportunity to object." *Id.* at 950.

The acts of fraud Woods participated in that produced the actual loss amount were sufficiently related to her 18 U.S.C. § 1028(a)(7) charge to survive plain error review. The crimes have four common factors such that they can fairly be considered part of a "common scheme or plan": a common accomplice, common victims, common purposes and a similar *modus operandi.* Woods' accomplice in all of the acts of fraud was her half-sister, Johnson. Woods' and Johnson's *modus operandi* was to "use[] stolen mail to obtain credit cards, checks and identification in the victims' names." They had a common purpose in obtaining goods and money in others' names. And, Woods' and Johnson's intent was to "target[] elderly individuals . . . because primarily they were an easy group that would not report the crime . . . ." *See United States v. McDaniel*, 398 F.3d 540, 553 (6th Cir. 2005) (finding relevant conduct where "the modus operandi (stealing mail, washing checks in acetone, and altering the checks' payees and amounts), the victims (financial institutions in the Grand Rapids, Michigan area), and the time period (fall 2001) involved in [defendant's] state and federal prosecutions were the same.").

**B. Any Error in Awarding Restitution was Harmless.**

Woods makes various claims of error in the district court's imposition of an award of restitution. However, because the entirety of the restitution award was converted to a fine at the end of the ninety-day period, and thus Woods was not required to pay any restitution, any error was harmless. *United States v. Johnson,* 467 F.3d 559, 564 (6th Cir. 2006) (an error is harmless where it did not cause the defendant to receive a more severe sentence).

**C. The District Court Did Not Commit Plain Error In Converting the Restitution Award to a Fine.**

Woods argues that the phrase "No fine imposed" on the district court's Judgment Order prohibited the conversion of the restitution award to a fine. Woods further argues that even if the district court could impose a fine, it failed to consider Woods' ability to pay the fine as required by 18 U.S.C. § 3572(a) (1996), and did not adequately justify departing upward from the suggested fine range under the Guidelines. Woods also argues that the conversion of the restitution award to a fine was itself error.

In the district court, Woods' attorney objected to the district court "going outside the range" when imposing sentence and therefore this court reviews the upward departures for abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 591 (2007). However, because Woods did not object to the conversion of the restitution amount to a fine, that issue is reviewed for plain error.

**1. The District Court's Use of the Words "No Fine Imposed"**

Woods cites no authority for her argument that the inclusion of the phrase "No fine imposed"

in the district court's Judgment prohibited the later conversion of the restitution award to a fine. The

Judgment, on its face, is clear as to its intentions:

> Restitution shall be paid to any victims identified within 90 days of the entry of
> this Judgment. Any balance of unclaimed monies shall be paid as a fine in this
> case.

Further, at the sentencing hearing the district court was clear as to the operation of the restitution

amount and its conversion to a fine. We find no error.

### 2. The District Court Made Sufficient Findings Under §5E1.2(d)

The Guidelines recommend a fine of between $3,000 and $30,000. Because the entire

restitution amount was converted to a fine at the expiration of the ninety-day period, the fine amount

was $30,436.08, and thus exceeded the Guidelines range by $436.08.

> In determining whether and to what extent to impose a fine, the court considers:
> defendant's income; earning capacity; financial resources; the burden on the
> defendant and his dependents; pecuniary loss inflicted on others as a result of the
> offense; whether restitution is ordered; the need to deprive the defendant of
> illegal gains; and the need to promote respect for the law, provide just
> punishment, and adequate deterrence.

*Tosca*, 18 F.3d at 1354 (citing 18 U.S.C. § 3572(a) & U.S. Sentencing Guidelines Manual §
5E1.2(d)).[5]

_____

[5]Title 18 U.S.C. § 3572(a) (1996) and U.S. Sentencing Guidelines Manual § 5E1.2(d) (2003)
list slightly different factors. Statutes prevail over conflicting Guidelines. *United States v. Butler*,
207 F.3d 839, 850 (6th Cir. 2000) ("When the Commission's interpretation, as embodied in a
guideline, does not square with clear Congressional intent, courts will not apply that guideline.").

Here, the district court made no findings on the record regarding Woods' ability to pay, other than the general statement in the Judgment that it had "assessed the defendant's ability to pay." This Court in *Tosca*, after reviewing[6] various Circuit courts' requirements for consideration of these factors, held that the district court had satisfied its obligations under the statute because it could be "fairly inferred" that the court considered the factors. Further, "the defendant has the burden of establishing that he or she is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine." *Tosca*, 18 F.3d at 1354.

---

[6]In *Tosca*, this court stated:

> Some circuits require specific findings on the defendant's ability to pay a fine. *See United States v. Fair*, 979 F.2d 1037, 1041 (5th Cir.1992) (specific findings are necessary where the district court adopts a PSR's findings but then departs from its recommendations on fines); *United States v. Masters*, 924 F.2d 1362, 1369 (7th Cir.1991), cert. denied, 500 U.S. 919 (1991) (district court must make findings on factors such as burden on defendant's family before imposing fine); *United States v. Cammisano*, 917 F.2d 1057, 1064 (8th Cir.1990) (district court must make specific findings on the record that demonstrate that factors in Guidelines § 5E1.2 were considered prior to imposing fine).

> Other circuits require consideration of the factors, but do not require express findings. *United States v. Savoie*, 985 F.2d 612 (1st Cir.1993) (district court's failure to make express findings in open court concerning appellant's financial condition and prospects did not necessitate reversal); *United States v. Marquez,* 941 F.2d 60, 65 (2nd Cir.1991) (sentencing court must consider ability to pay, but need not articulate its reasoning); *United States v. Mastropierro*, 931 F.2d 905, 906 (D.C. Cir.1991) (when record demonstrates that judge considered ability to pay before imposing fine, appellate court will not reverse merely because no express finding was made but will review the finding of ability to pay necessarily implied by such consideration).

*Id.* at 1354 n.2.

In the instant case, there was sufficient indicia of the court's consideration of Woods' ability to pay such that the district court did not abuse its discretion in imposing the fine, especially because Woods did not request more specific findings in the district court or carry her burden of putting forth evidence that she would not be able to pay her fine under the terms the court specified. *Id.* at 1355 ("It is a general principle of appellate jurisdiction that a party desiring more particularized findings at the trial court level must request them from the trial court.").

The departure upwards from the suggested fine range, by $436.08, is reviewed for procedural and substantive reasonableness. *Gall*, 552 U.S. at 51.

> Review for procedural reasonableness is a three-step inquiry. An appellate court must determine whether the district court: (1) properly calculated the applicable advisory Guidelines range; (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*United States v. Young*, 553 F.3d 1035, 1054 (6th Cir. 2009).

The PSR correctly calculated the Guideline range to provide for a fine of between $3000 and $30,000. During the sentencing hearing, the district court considered the 18 U.S.C. § 3553(a) factors, and clearly stated that it was imposing the fine as an alternative to restitution because "no one should actually benefit from committing the crime." Also, because the fine amount was tied to the restitution amount, the fine was substantively reasonable. Therefore, the district court did not commit an abuse of discretion in departing upwards from the suggested fine range by $436.08.

### 3. The District Court's Order Imposing a Conversion from Restitution to Fine Was Not Error

Woods' argument that the district court committed error in ordering the conversion of the restitution amount to a fine was waived because she did not raise it in the district court. *United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001) ("[T]he defendant waived any right to appeal the imposition of a fine because he failed to object at the trial court level." (quoting *Tosca,* 18 F.3d at 1355)).

In any event, the district court clearly has authority to impose both a restitution award and a fine, and it can fairly be inferred that the district court considered the factors for both restitution and fine. 18 U.S.C. § 3571(a) (1987); 18 U.S.C. § 3663A (2000). Further, the district court expressed a proper purpose in ordering that any remaining restitution be converted to a fine (so that Woods would not benefit from her crime), and Woods did not make any showing of an inability to pay or request further specific findings of fact regarding her ability to pay.

### D. The District Court Correctly Calculated Woods' Sentencing Range

Woods argues that pursuant to U.S. Sentencing Guidelines Manual § 4A1.2(a)(2) (2007), a number of charges in her criminal history report should have been consolidated in calculating her criminal history score because she was sentenced for them on the same day, June 22, 2000. Woods did not object to the calculation of her criminal history score in the district court, and thus we review for plain error. *Vonner,* 516 F.3d at 385-86.

Consolidating the crimes for the purpose of calculating Woods' points would not reduce her criminal history point total due to the operation of U.S. Sentencing Guidelines Manual § 4A1.1(c) (2007), which allows for the addition of a maximum of only four points for prior offenses that resulted in less than sixty days imprisonment, regardless of the actual points that would otherwise be scored based on actual convictions. However, Woods argues that if the district court had considered the charges consolidated, it would have been less inclined to depart upward pursuant to U.S. Sentencing Guidelines Manual § 4A1.3(a)(1)(2003)[7] in order to reflect Woods' actual criminal history. The district court imposed a sentence of 51 months, departing upward from the suggested 30-37 month range.

Woods relies on U.S. Sentencing Guidelines Manual § 4A1.2 (2007) exempting "sentences that were imposed on the same day" from being counted individually. That same section, however, also states that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest . . ." U.S. Sentencing Guidelines Manual § 4A1.2 (2007); *see also United States v. Gale*, 468 F.3d 929, 936 (6th Cir. 2006) ("Only if there was no intervening arrest may the court consider the factors that may otherwise render prior sentences

---

[7]"Standard for Upward Departure.--If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."

related." (internal quotations omitted)). Woods' criminal history report makes clear that each of the violations that she claims merit consolidation were separated by an arrest.

Finally, it was not substantively unreasonable for the district court to depart upward. We review the district court's upward departure for abuse of discretion because Woods objected to the departure in the district court. *Gall*, 552 U.S. at 51. In reviewing a non-Guideline sentence

> the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.[8]

*Gall*, 552 U.S. at 51.

However, "[a] sentence will fail to be substantively reasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Smith,* 474 F.3d 888, 894 (6th Cir. 2007) (internal brackets and quotations omitted).

---

[8]This Court in *United States v. Smith*, 474 F.3d 888 (6th Cir. 2007) applied a "form of proportionality review: the greater the variance from the range, the more compelling the justification for variance must be." *Id.* at 892 (internal quotations omitted). However, in *United States v. Tate*, 516 F.3d 459 (6th Cir. 2008), this Court questioned whether such a "proportionality review" was appropriate under *Gall*. *Id.* at 470 ("The Supreme Court, however, recently held that 'while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, the courts of appeals must review all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard.'" (quoting *Gall*, 552 U.S. at 41)).

The Sentencing Guidelines expressly address the potential propriety of an upward adjustment under the instant circumstances in U.S. Sentencing Guidelines Manual § 4A1.3(a)(1) (2003) (stating that "an upward departure may be warranted" where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history"). This Court in *Smith*, held that an upward departure was reasonable where the district court analyzed the criminal history of the defendant, what the significance of that history was in choosing a sentence and the reason why it was imposing the sentence it was. *Smith*, 474 F.3d at 892-94; *see also Tate*, 516 F.3d at 470 ("We do not require a rote recitation of § 3553(a) factors but rather an explanation of why the district court chose the sentence it did.").

The district court considered the §3553(a) factors at the sentencing hearing and gave sound reasons for departing upward. Thus, we find that the sentence was substantively reasonable, and that the district court did not abuse its discretion.

Based on the foregoing, we AFFIRM the district court.