File Name:  11a0454n.06

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No.  10-5055

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 06, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| STEVEN GILMORE, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

Before:  KEITH, GIBBONS, and WHITE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Steven Gilmore pled guilty to aggravated identity theft and access device fraud.  He appeals his sentence of forty-two months' imprisonment. Gilmore claims that the district court improperly calculated his guidelines range by assessing a sixteen-level increase in accordance with § 2B1.1 of the United States Sentencing Guidelines; he argues that this increase was improperly assessed because he made no unauthorized charges with the access devices he stole.  For the reasons discussed below, we affirm the sentence imposed by the district court.

I.

In December 2007, police in Hartsville, Tennessee, received a complaint from an individual who stated that his debit card had been used without his permission.  Investigating officers subsequently interviewed Anthony Michael Atkins, who had been previously convicted of access device fraud.  Atkins confessed that he had improperly used the debit card; he also said that Gilmore, an acquaintance, had provided him with the necessary personal identification information to commit

the identity theft.[1]  Atkins agreed to cooperate with law enforcement's investigation into Gilmore. After a series of controlled purchases, Gilmore agreed to sell his complete database of information to an undercover Tennessee Bureau of Investigation agent in exchange for $2,800.  After completion of the transaction, Gilmore was arrested.  An analysis of the data set revealed that it contained a total of 2,747 access devices: 1,143 stolen Social Security numbers and 1,604 stolen bank account numbers.  Gilmore subsequently confessed to the crime and cooperated with authorities.

A ten-count indictment was filed against Gilmore, charging him with six counts (Counts 1 through 6) of unlawfully transferring identification information, in violation of 18 U.S.C. § 1028(a)(7) and 18 U.S.C. § 2; two counts (Counts 7 and 8) of unlawfully transferring means of identification of other persons in relation to a felony, in violation of 18 U.S.C. § 1028A and 18 U.S.C. § 2; one count (Count 9) of unlawful trafficking in unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 2; and one count (Count 10) of unlawful possession of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) and 18 U.S.C. § 2.  Gilmore pled guilty to all ten counts.

For Counts 1 through 6 and 9 through 10, the presentence report calculated a total offense level of twenty-three and a criminal history category of I, translating to a guidelines range of forty-six to fifty-seven months' imprisonment.[2]  The probation office found that a sixteen-level enhancement was required under U.S.S.G. § 2B1.1(b)(1)(I), based on Application Note 3(F)(i).  Specifically, the probation office noted that while "the individuals whose identities were stolen by the defendant did

---

[1] Gilmore initially obtained personal identification information from the District Attorney's Office in Putnam County, Tennessee, where he was employed.  He later became employed at Policy Studies, Inc. ("Policy Studies"), a company that contracted with the Tennessee Department of Human Services.  As part of that employment, Gilmore had access to personal identification information for residents of Tennessee and other states.  Gilmore was terminated from Policy Studies but retained possession of the personal identification information he had been selling.

[2] For Counts 7 and 8, the guidelines recommendation was twenty-four months for each count.

not suffer any financial losses," the commentary to U.S.S.G. § 2B1.1(b)(1)(I) "states that in a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized access device and shall not be less than $500 per access device." Based on that requirement, the presentence report valued the loss at $1,391,000 (2,782 times $500). Under U.S.S.G. § 2B1.1(b)(1)(I), that magnitude of loss merited a sixteen-level increase.

Gilmore filed an objection to the sixteen-level enhancement on the grounds that he did not make any unauthorized charges with the data. The district court considered Gilmore's objection but rejected his argument that use was a prerequisite under Application Note 3(F)(i). The court concluded instead that the $500-per-device rule sets a minimum amount of loss for each stolen or fictitious access device, used or not. It therefore accepted the presentence report's calculated guidelines range of forty-six to fifty-seven months' incarceration.[3] However, the court found that this sixteen-level enhancement would result in an "overly harsh" sentence and granted Gilmore's motion for a downward variance pursuant to 18 U.S.C. § 3553(a). It imposed a sentence of eighteen months' imprisonment for Counts 1 through 6, 9, and 10, to run consecutively to the twenty-four month sentence imposed for Counts 7 and 8, for a total sentence of forty-two months. Gilmore appeals this sentence.

II.

"When reviewing a district court's application of section 2B1.1(b)(1), we review the district court's factual finding as to amount of loss for clear error." *United States v. Jones*, --- F.3d ---, 2011 WL 1364009, at *4 (6th Cir. Apr. 12, 2011) (citing *United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010)). To the extent that the issues raised on appeal involve a construction of the sentencing guidelines, this court reviews the district court's construction of the sentencing guidelines and the accompanying commentary *de novo*. *United States v. Portela*, 469 F.3d 496, 498 (6th Cir. 2006).

---

[3] Without the sixteen-level enhancement, the probation office calculated that the total offense level would only be eight, correlating to a guidelines range of zero to six months' imprisonment.

III.

Gilmore challenges the district court's calculation of loss under U.S.S.G. § 2B1.1. Particularly, Gilmore contends that the district court erred by applying the $500-per-device rule contained in Application Note 3(F)(i), found in the commentary to the guidelines. Gilmore does not challenge the general validity of the rule, as "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *see also United States v. Jarman*, 144 F.3d 912, 914 (6th Cir. 1998) ("Application Notes to the Sentencing Guidelines are accorded controlling weight."). Rather, he argues that because he did not make any unauthorized charges with the access devices he possessed, Application Note 3(F)(i) is inapplicable to this case. According to Gilmore, this Application Note makes clear that, for the type of access device Mr. Gilmore possessed, the rule only applies if a charge was made with the access device.

Gilmore bases his argument almost exclusively on the text of the commentary. The text of Application Note 3(F)(i) reads:

> <u>Stolen</u> <u>or</u> <u>Counterfeit</u> <u>Credit</u> <u>Cards</u> <u>and</u> <u>Access</u> <u>Devices;</u> <u>Purloined</u> <u>Numbers</u> <u>and</u> <u>Codes</u>.—In a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall be not less than $500 per access device. However, if the unauthorized access device is a means of telecommunications access that identifies a specific telecommunications instrument or telecommunications account (including an electronic serial number/mobile identification number (ESN/MIN) pair), and that means was only possessed, and not used, during the commission of the offense, loss shall be not less than $100 per unused means.

The plain language of the note's first sentence imposes two clear conditions: (1) loss shall include any unauthorized charges made with the counterfeit access device or unauthorized access device, and (2) the loss shall be not less than $500 per access device. Put another way, the loss for each access device under Application Note 3(F)(i) is the greater of the actual loss resulting from unauthorized

charges or $500. The plain language sets a floor for calculating the loss attributable to each device, namely $500; it does not limit loss calculations to devices actually used. *See United States v. Dodson*, 357 F. App'x 324, 325 (2d Cir. 2009) (reading Application Note 3(F)(i) to set a $500 floor "even in the absence of an actual loss").

Gilmore offers two interpretative arguments in support of his position. First, he emphasizes the word "made" in the first sentence of Application Note 3(F)(i) and suggests that a transaction must have been "made" in order to apply this rule. However, the clear language of the sentence indicates that "made" only applies to the first condition laid out in this sentence, including unauthorized charges in the cost calculation if the device is actually used. The word "made" has no relation to the second condition, which establishes the $500 floor. The plain language of this term only provides that "loss . . . shall not be less than $500 per access device."

Second, Gilmore emphasizes the language "only possessed, and not used" found in the note's second sentence. This language, however, also has no relation to the $500 floor, as it is a rule that only applies in the alternative to the first rule (i.e., that of actual loss with a $500 floor) if the unauthorized access devices in question provide "telecommunications access." Gilmore does not argue that social security and bank account numbers qualify as access device numbers that provide telecommunications access, so the language of the alternative rule is inapposite.

Our court's own precedent follows this plain reading of Application Note 3(F)(i). In *United States v. Woods*, the defendant pled guilty to possession of unauthorized credit cards. 367 F. App'x 607, 609 (6th Cir. 2010). The total loss under § 2B1.1 was calculated to be $44,178.22, which the court noted "included two assessments of $500 for two counterfeit credit cards the women possessed but had not used pursuant to U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n. 3(F)(i) (2009)." *Id.* at 609 n.1. Although the defendant in *Woods* does not appear to have raised the issue Gilmore presents here, the result in that case undermines the claim that the $500-per-device rule is limited to access devices actually used.

Other courts similarly have not limited the application of the $500-per-device rule to those devices actually used by the defendant. In *United States v. Little*, the defendant stole two rolls of credit card receipts from a Pennsylvania gas station, which contained 886 account numbers. 308 F. App'x 633, 634 (3d Cir. 2009). Little used only a few of these card numbers, making a total of $763.40 in charges. *Id.* at 634 n.1. The Third Circuit, however, applied the $500-per-device rule to each of the 886 account numbers and calculated the resultant loss to be greater than $400,000, translating to a fourteen-level increase pursuant to U.S.S.G. § 2B1.1. *Id.* at 634. Similarly, in *United States v. Camper*, the Ninth Circuit calculated the total loss under § 2B1.1 "by applying the Sentencing Guidelines' $500 presumed loss to each of the 1,531 stolen credit cards." 337 F. App'x 631, 632 (9th Cir. 2009). There was no evidence in the case that each of the 1,531 stolen credit card numbers had been used. *Id.*

Because the district court was correct to apply the $500-per-device rule to all of the devices stolen by Gilmore, there was no procedural or substantive error stemming from this calculation.[4] Therefore, the sentence imposed by the district court is affirmed.

---

[4] Gilmore also contends that the district court erred when it designated Policy Studies' expenses resulting from Gilmore's theft—calculated to be $47,500—as "losses" under U.S.S.G. § 2B1.1(b)(1) because the company was not a victim of the fraud as contemplated by § 2B1.1. This argument, however, is moot; given the large loss calculated pursuant to the $500-per-device rule, the sixteen-level increase under § 2B1.1 applies regardless of whether the $47,500 sum is included or not.