NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0231n.06

No. 08-6135

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Apr 14, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| RONALD D. ADKINS, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

Before: MARTIN and GIBBONS Circuit Judges, and MARBLEY, District Judge.[*]

**MARBLEY, District Judge.** Defendant-Appellant, Ronald Adkins, appeals his conviction of all charges in a six-count indictment. He alleges that the district court erred in: (1) issuing a jury instruction on a *Pinkerton* theory of liability, resulting in confusion on the part of the jurors; (2) denying his Rule 29 motion for acquittal based on insufficient evidence to support his conviction on Counts 3 and 6; and (3) denying his request for a two offense level reduction based on the fact that he played a minor role in the offense. Because the district court's jury instructions adequately informed the jury of the law, there was sufficient evidence to support his conviction on all six counts, and the district court did not abuse its discretion in denying him a reduction, we **AFFIRM** Adkins's conviction.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Defendant-Appellant, Ronald Adkins, along with Sam Patton and Timothy Brown, was originally charged on May 8, 2007, in a two-count indictment alleging conspiracy, in violation of 18 U.S.C. § 371, and interstate transportation of fraudulently obtained goods, in violation of 18 U.S.C. § 2314. All three men were indicted on June 25, 2006. On April 8, 2008, as Adkins was preparing for trial on the original indictment, the grand jury returned a superseding indictment. The superseding indictment alleged six counts: (1) conspiracy to commit identity theft, wire fraud, and interstate transportation of fraudulently obtained goods, in violation of 18 U.S.C. § 371; (2) conspiracy to possess fraudulent identification documents, in violation of 18 U.S.C. §§ 1028(a)(3) & (f); (3) aggravated identity theft based on false identification documents, in violation of 18 U.S.C. § 1028A; (4) interstate transportation of fraudulently obtained goods, in violation of 18 U.S.C. § 2314; (5) wire fraud, in violation of 18 U.S.C. § 1343; and (6) aggravated identity theft based on wire fraud, in violation of 18 U.S.C. § 1028A. The charges alleged that Adkins, Patton, and Brown drove from Detroit to Atlanta to purchase goods for resale using fraudulent identification and the personal identifying information of others.

Patton and Brown both entered guilty pleas, and were sentenced to twenty and forty-five months' imprisonment, respectively. Adkins went to trial and was convicted on all six counts. He was sentenced to fifty-four months' imprisonment—thirty months each on Counts 1, 2, 4, and 5, to be served concurrently, and twenty-four months each on Counts 3 and 6, to run concurrently with each other, but consecutive to all other counts.

At trial, it was established that Patton, Brown, and Adkins planned a trip to Atlanta to

purchase items for resale using fraudulent identification documents. Patton had purchased credit reports of various individuals, and he created false identification documents using the individuals' information and photographs of Brown and Adkins. Patton had separate agreements with Brown and Adkins regarding how to split the proceeds from their scheme. Because Adkins and Brown had previously worked together on an identity theft scheme in Columbus, Ohio—for which Adkins was arrested two years earlier—Adkins would get fifty percent of the proceeds from resale of items he purchased using the fraudulent identification documents. Brown was to receive a smaller percentage of the proceeds from resale of his purchases.

On their way from Detroit to Atlanta, the three men stopped at Hamilton Place Mall in Chattanooga, Tennessee, where Brown and Adkins made purchases. Adkins used a Michigan driver's license with his picture and the name and other personal information belonging to a George Hanna. Adkins purchased a Rolex watch for $9,924 at Reed's Jewelry Store. Julie Ann Horton, the woman who sold the Rolex to Adkins, authenticated the store's videotape of the transaction, but she was unable positively to identify Adkins as either the person to whom she had sold the watch or the person in the video.

An officer testified at trial that all three men were arrested on December 12, 2006, when Brown was pulled over driving a U-Haul truck that contained fraudulently obtained merchandise and several fraudulent identification documents. Adkins and Patton had been following Brown in another vehicle. Officers searched both the U-Haul truck and Patton's motel room. They found more fraudulently obtained merchandise, receipts, and false identification documents in the motel room. The only document taken from Adkins's person was his own driver's license, which he

provided to police. The three men were then taken to the police station and separated. A driver's license with the name George Hanna was found discarded in the waste basket near where Adkins had been sitting.

The government introduced evidence of Adkins' prior 2004 arrest relating to identity theft in Columbus, Ohio, including two Michigan driver's licenses and two social security cards that had been obtained from Adkins during the investigation. Gerald Phillip Hanna testified that he had been notified in December 2006 by a jewelry store that he had opened an account at the store. He testified to both his social security number and his birthday—his social security number was one off from the number used on the driver's license discarded at the police station, and his birthday was in the same month and close to the same day as the birthday listed on that document.

Patton testified that he had purchased credit reports of various individuals from a contact at a mortgage company, and that he created fake driver's licenses using information from those reports and photographs of Brown and Adkins. He testified that he recalled making two fake driver's licenses for Adkins to use. He also testified that, upon being instructed to purchase a silver Rolex watch, Adkins purchased a gold watch instead. That was one of several problems Adkins had in fulfilling his duties as assigned. He was also unable to remember the social security number he was supposed to use, and he was often declined in his attempts to make fraudulent purchases. The only specific purchase Patton could recall Adkins making was the Rolex, and the only false identification Patton remembered Adkins possessing was the George Hanna driver's license. He also testified that eventually, Adkins was assigned to drive the U-Haul and was not allowed to make any more purchases.

At the close of the government's case, Adkins made a Rule 29 motion, alleging that the government had failed to establish that he was knowingly involved in wire fraud, knowingly participated in a scheme to possess five or more fake identification documents, or knowingly possessed the identity of another person. The court denied the motion without explanation.

The defense presented two witnesses. The first was Dr. Ron Niedberding, the Bureau of Prisons psychologist who had determined that Adkins was competent to stand trial. Dr. Niedberding testified that Adkins's tests revealed an IQ of 73, putting him in the bottom 4% of the population. He also testified that he believed Adkins could function at a slightly higher level than his IQ score indicated, and that Adkins told him that he thought the charges against him should be dropped because his job was just to drive the truck.

At the conclusion of the case, the court instructed the jury. As to Count 1, conspiracy, the court instructed the jury that they must find, beyond a reasonable doubt, that:

> First, two or more persons conspired or agreed to commit the crime of interstate transportation of fraudulently obtained goods, wire fraud, or identity theft; second, the defendant knowingly and voluntarily joined the conspiracy; and, third, a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy. You must be convinced that the government has proven all of these elements beyond a reasonable doubt in order to find the defendant guilty of the conspiracy charge.

As to Counts 3 through 6, the court gave the jury a *Pinkerton* instruction:

> Counts 3 through 6 of the indictment accuse the defendant of committing the crimes of identity theft, interstate transportation of fraudulently obtained goods, and wire fraud. There are three ways that the government can prove the defendant guilty of these crimes. The first is by convincing you that the defendant personally committed or participated in the crime. The second way is if the defendant was an aider and abettor, as I instructed you previously. The third way is based on the legal rule that all members of a conspiracy are responsible for acts committed by the other members

as long as those acts are committed to help advance the conspiracy and are within the reasonably foreseeable scope of the agreement. In other words, under certain circumstances, the act of one conspirator may be treated as the act of all. This means that all the conspirators may be convicted of a crime committed by only one of them, even though they did not all personally participate in that crime themselves. But for you to find the defendant guilty of Counts 3, 4, 5, or 6 based on this legal rule, you must be convinced that the government has proved each and every one of the elements of the offenses beyond a reasonable doubt. This does not require proof the defendant specifically agreed or knew that the crime would be committed, but the government must prove that the crime was within the reasonable contemplation of the persons who participated in the conspiracy. The defendant is not responsible for the acts of others that go beyond the fair scope of the agreement as the defendant understood it. If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on the charge or charges. If you have a reasonable doubt about any one of them, then the rule that the act of one conspirator is the act of all would not apply.

The jury convicted Adkins of all six charges. Following the trial, the defense moved for a judgment of acquittal on Count 6, or for a new trial on Count 6, or for concurrent sentences on Counts 3 and 6, alleging that there was insufficient evidence to support a conviction on Counts 3 and 6. The court denied the motion, concluding that Adkins had not alleged a legitimate double jeopardy claim, and that the jury could have concluded that his possession of the false driver's license was connected to wire fraud.

The presentence report was provided to the parties on July 8, 2008. It found a base offense level for the theft and fraud counts of 7 under the United States Sentencing Guidelines Section 2B1.1(a)(1). It increased the offense level by 10 levels because it held Adkins responsible for the total loss attributable to the conspiracy, which was $68,434. The offense level was increased another 2 levels based on the fact that there were 12 individual victims and 26 victim companies in the conspiracy. With an offense level of 15 and a criminal history category of III, the advisory guideline

range was 24-30 months, with additional 24- or 48-month consecutive sentences, for a total range of 48-78 months. The defense objected that Adkins was not given a two level reduction for playing a minor role in the offense.

At the sentencing hearing, Adkins contended that he should be given the two level reduction because he was less culpable than Patton or Brown. The court acknowledged the availability of a reduction for playing a minor role in the offense, but determined that Adkins did not qualify as a minor participant. He was then sentenced to a total of fifty-four months' imprisonment.

## II. JURISDICTION

This Court has jurisdiction over Appellant's appeal of his conviction pursuant to 28 U.S.C. § 1291 because the district court entered a final judgment, and Appellant timely filed a notice of appeal. This Court has jurisdiction to review the district court's sentencing determination pursuant to 18 U.S.C. § 3742(a) as a result of the final judgment entered by the district court and Appellant's timely filing of a notice of appeal pursuant to 28 U.S.C. § 1291.

## III. ANALYSIS

### A. THE *PINKERTON* INSTRUCTION

#### 1. Standard of Review

A district court's jury instructions are "'reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision.'" *Innes v. Howell Corp.*, 76 F.3d 702, 714 (6th Cir. 1996) (quoting *Beard v.*

*Norweigian Caribbean Lines*, 900 F.2d 71, 72 (6th Cir. 1990)). The judgment will be reversed "only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993).

## 2. Analysis

Adkins alleges that the district court erred in instructing the jury on the *Pinkerton* theory of liability with respect to Counts 3-6. The *Pinkerton* theory of liability is predicated on the idea that once a participant decides to join a conspiracy, he is responsible for any substantive offenses committed by his co-conspirators in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 647 (1946). The district court instructed the jury pursuant to *Pinkerton* on Counts 3-6, regarding the substantive offenses underlying the conspiracy. Adkins contends that this instruction, viewed properly in context with all of the other instructions, confused or misled the jury. We disagree.

In support of his contention, Adkins relies on *United States v. Henning*, 286 F.3d 914 (6th Cir. 2002), for the proposition that when a defendant is charged with both substantive crimes and a conspiracy, a *Pinkerton* instruction can effectively relieve the government of its burden of proof with regard to the substantive crimes. This reliance is misplaced. In *Henning*, after instructing the jury on the conspiracy charge, the district court instructed the jury on *Pinkerton* liability with respect to the substantive crimes charged. *Henning*, 286 F.3d at 920. The district court later reversed the conspiracy conviction, but did not consider the effect that reversal might have had on the substantive crime convictions: "it failed to consider that, pursuant to the *Pinkerton* instruction, the jury may have convicted Henning on the substantive counts only because they believed he was guilty of

conspiracy." *Id.* The *Henning* decision is inapposite here, where the conspiracy conviction was never disturbed. Even if the jury convicted on the substantive counts only because it found that Adkins was guilty on the conspiracy count, there was no error—that is the essence of *Pinkerton* liability, and the district court properly instructed the jury as such.

Adkins's contention that the jury may have only convicted him on the conspiracy charge due to the *Pinkerton* instruction is unpersuasive, given that the jury was instructed on the conspiracy charge first, and the *Pinkerton* instruction itself indicated that it only applied to Counts 3-6, which were the substantive crime charges.

The jury instructions, viewed as a whole—considering the conspiracy instructions in conjunction with the *Pinkerton* instruction—were neither confusing nor misleading. On the contrary, they accurately and adequately informed the jury of the law.

## B. THE RULE 29 MOTION

### 1. Standard of Review

An appellate court reviews a district court's "denial of a Rule 29 motion for judgment of acquittal due to insufficient evidence under the same standard as the district court." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992). When confronted with a Rule 29 motion, a trial court "must consider all of the evidence in a light most favorable to the government and grant the motion when it appears to the Court that the evidence is insufficient to sustain a conviction." *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984). All reasonable inferences must be drawn in favor of the government, and "[i]t is not necessary that the evidence exclude every reasonable hypothesis except that of guilt." *Id.*

## 2. Analysis

Adkins alleges that the government failed to prove, beyond a reasonable doubt, that he knew that the false social security number and personal information on the false driver's license belonged to someone else, or that he knew that he did not have lawful authority to possess the identification. Consequently, Adkins contends, he was entitled to a judgment of acquittal due to insufficient evidence on Counts 3 and 6, which both alleged aggravated identity theft. The district court rejected that claim, as do we.

The statute under which Adkins was charged provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." 18 U.S.C. § 1028A(a)(1). The court instructed the jury that the elements of the offense for Count 3 were: (1) the defendant knowingly possessed a means of identification of another person; (2) the defendant knew that the means of identification belonged to another person; (3) the defendant knew that he had no lawful authority to possess the means of identification; and (4) the defendant possessed the means of identification during and in relation to the crimes of possession of fraudulent identification documents and conspiracy to do the same. Similarly, the court instructed the jury that the elements of the offense for Count 6 were: (1) the defendant knowingly possessed a means of identification of another person; (2) the defendant knew that the means of identification belonged to another person; (3) the defendant knew that he had no lawful authority to possess the means of identification; and (4) the defendant possessed the means of identification during and in relation to the crime of wire

fraud.

As a threshold matter, we note that the district court properly instructed the jury on Counts 3 and 6. Adkins points the Court's attention to *Flores-Figueroa v. United States*, 129 S.Ct. 1886, 1894 (2009), in which the Supreme Court held that a conviction for aggravated identity theft must be supported by evidence "that the defendant knew that the means of identification at issue belonged to another person." The district court here included that element as the second element of the offense for Counts 3 and 6.

The government produced evidence that Adkins had previously been arrested for using false identification, so a reasonable inference may be drawn that Adkins knew he had no lawful authority to possess a driver's license in the name of George Hanna.[1] Additionally, the government produced evidence that, upon being taken to the police station, Adkins discarded the false identification in the waste basket—further proof that he knew he did not have any authority to possess the license. It was also established at trial that, although Adkins was not personally involved in Patton's purchase of credit reports from his contact at a mortgage company, he did know that Patton made such a purchase, and that the false identification Adkins used to make purchases was created by combining a picture of himself with information from the credit reports. Thus, a reasonable inference supporting the conviction may be drawn that he knew the false identification he was using belonged to someone else.

As to the wire fraud, a copy of the George Hanna driver's license taken at Reed's Jewelry

---

[1]Presumably, Adkins knew his own name, and that it was not "George Hanna."

Store on December 2, 2006, matched the George Hanna driver's license that Adkins attempted to discard at the police station on December 12, 2006. The jury could reasonably infer that Adkins had been in possession of the license from December 2, 2006, to December 12, 2006, and that his possession was in connection with the wire fraud that occurred on December 2, 2006. In addition, while the actual wire transmission occurred on December 2, 2006, the government presented evidence, in the form of Patton's testimony, that the fraud scheme continued until all three men were arrested on December 12, 2006. Thus, it would also be reasonable for the jury to infer that Adkins's possession of the George Hanna license was in relation to the wire fraud.

Because Adkins's conviction on Counts 3 and 6 is supported by sufficient evidence in the record, his conviction is affirmed.

## C. THE SENTENCING REDUCTION

### 1. Standard of Review

A district court's sentencing decisions are reviewed under the advisory sentencing guidelines for abuse of discretion. *United States v. Shor*, 549 F.3d 1075, 1077 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). In particular, a district court's decision regarding the minor participant reduction is given significant deference. *United States v. Gabbard*, 586 F.3d 1046, 1052 (6th Cir. 2009) ("While an independent review of the record might lead us to grant the minor participant reduction, the essentially factual nature of the district court's determination requires us to give substantial deference to the sentencing court."). Thus, a reviewing "'court will not disturb the district court's determination of a defendant's role in the criminal activity unless it is clearly erroneous.'" *United States v. Samuels*, 308 F.3d 662, 672 (6th Cir. 2002) (quoting *United States v.*

*Williams*, 940 F.2d 176, 180 (6th Cir. 1991)).

## 2. Analysis

The United States Sentencing Guidelines permit a two offense level reduction "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(a). A defendant "'seeking a downward adjustment of a sentence otherwise required by the guidelines . . . has the burden of proving by a preponderance of the evidence his or her entitlement to a reduction.'" *United States v. Mahan*, 190 F.3d 416, 425 (6th Cir. 1999) (quoting *United States v. Adu*, 82 F.3d 119, 123 (6th Cir. 1996)). The two level reduction "applies to a defendant who is substantially less culpable than most other participants, but whose role could not be described as minimal." *Mahan*, 190 F.3d at 426 (citing U.S.S.G. § 3B1.2, cmt. n.3). A defendant is not "automatically entitled to a minor participant reduction simply because [a co-conspirator] could have been deemed a more culpable participant than [the defendant]." *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).

The district court's decision not to grant Adkins the two level reduction was not clearly erroneous. The district court explained its decision as follows:

> The defendant is asking for a role adjustment because he submits he's a minor participant in criminal activity. This role is appropriate when someone is less culpable than most of the other participants but his role could not be described as minimal. And as the defendant concedes, he bears the burden of proving he played a minor role.
>
> Here we have concerted activity where each person involved in the activity is responsible for all the actions of the others. The defendant's role in this case was more than just driving a vehicle. When he was apprehended, he had some false identification on him. I don't recall whether it was in just one name or multiple names. I also don't recall whether there were credit cards on his person. But I do recall that there was a false identification document in his possession or that had recently been in his possession when he was stopped.

> The Court, in considering that the defendant bears the burden of proof on this issue, will deny the request. It is not at all evident, from the evidence that came in and the arguments, that the defendant is less culpable than most other participants, especially in this particular transaction where he was actually someone who actually made purchases, went in and made false statements. So the Court will deny that objection.

The court considered the evidence presented and determined that, given Adkins's role in making purchases with false identification documents and making false statements to store employees, he could not be considered a minor participant. By Adkins's own admission, he wanted to play a larger role than Patton would allow due to his difficulty remembering what he was supposed to do and say while making purchases—a factor that counsels against awarding a minor participant reduction. *See Gabbard*, 586 F.3d at 1052 (affirming district court's denial of reduction, "in light of [the defendant's] attempt to increase his role in the conspiracy"). We see no clear error in the district court's analysis, and we afford the court's decision the proper deference by affirming it.

## IV. CONCLUSION

For the foregoing reasons, Appellant's conviction and sentence are **AFFIRMED**.