**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-4531**

_____

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

     v.

OFORI AWUAH, a/k/a Oforly Awuah,

                Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:14-cr-00121-JAG-2)

_____

Submitted: April 28, 2016          Decided: July 7, 2016

_____

Before DUNCAN, KEENAN, and THACKER, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

_____

John O. Iweanoge, II, THE IWEANOGE'S FIRM, P.C., Washington, D.C., for Appellant. Dana J. Boente, United States Attorney, Alexandria, Virginia, Michael C. Moore, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Defendant-Appellant Ofori Awuah of one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); three counts of access device fraud, in violation of 18 U.S.C. § 1029(a); and one count of conspiracy to commit access device fraud, in violation of 10 U.S.C. § 1029(b)(2). Awuah contends on appeal that the evidence was insufficient to support his convictions, and that the district court erred in admitting testimony concerning prior, uncharged conduct. For the reasons that follow, we vacate Awuah's conviction for aggravated identity theft, affirm his other convictions, and remand for further proceedings consistent with this opinion.

I.

The charges filed against Awuah stem from his role in a conspiracy to fraudulently acquire electronic devices from several Walmart and Best Buy stores across Virginia. Viewed in the light most favorable to the government, see United States v. Adepoju, 756 F.3d 250, 254 (4th Cir. 2014) (citation omitted), the evidence to support the charges is as follows.

A.

On October 25, 2013, Awuah entered the Burke Commons Walmart in Fairfax County, Virginia, to pick up an Apple iPhone which was ordered online using a credit card number that had

been stolen from an individual in Nesquehoning, PA. The order designated Edward Johnson as the primary pickup person and Winfred Mensah as the alternate pickup person.[1]

Walmart requires individuals picking up online orders to show identification matching the name of either the primary or alternate designated pickup person. Requel Reyes, the Walmart associate who assisted Awuah that day, testified that she gave Awuah an iPhone after he presented identification matching the primary name on the order, Edward Johnson. Walmart video surveillance captured this transaction.

B.

On January 14, 2014, Awuah travelled to a Best Buy store in Stafford County, Virginia, with three other individuals: Keyana Barnes, Michael Bonsu, and Dane Ellis. The group engaged in two transactions at that store. First, Bonsu used a counterfeit credit card given to him by Awuah to pick up an online order for an Apple iPad worth $631.79. This order had been placed in Bonsu's name using a stolen credit card number.

Next, Barnes attempted to pick up another order for an iPad using stolen identification and a different counterfeit card.

---

[1] Mensah was an acquaintance of Awuah's. At trial, Mensah testified that Awuah had stayed at his apartment in early 2013. Mensah testified that while Awuah was staying with him, Mensah's identification went missing.

3

The order number she gave the cashier, however, was for the order Bonsu had already collected. Barnes returned to the car in which Awuah, Barnes, and Bonsu were waiting and told Awuah that he had given her the incorrect order number. Once Awuah relayed the correct order number to Barnes, she reentered Best Buy and attempted to collect the second order. When the Best Buy computer system reported that the last four digits on the counterfeit card Barnes gave to the cashier did not match the last four digits of the credit card number used to place that order, Barnes used her cell phone to call Awuah, who provided her with the correct credit card number. Barnes relayed this number to the cashier and was finally able to complete the transaction.

After Barnes left the store, Best Buy employees notified the Stafford County Sheriff's Office about these suspicious transactions. The Stafford County deputy who responded to the call in turn called the Fredericksburg Police Department to notify them that the group might visit the Fredericksburg Best Buy next.

Later that day, the group did in fact travel to the Fredericksburg Best Buy. Again, Bonsu entered the store first and picked up an iPad that had been ordered in his name using a stolen credit card number. Ellis, Barnes, and Awuah remained in the car. While Bonsu was in the store, Awuah made Barnes a new

4

counterfeit credit card using an embossing machine. Barnes then entered the store and picked up another order for an iPad. After completing this transaction, Barnes returned to the car in which Awuah, Bonsu, and Ellis were waiting.

As soon as the group began to drive away, Fredericksburg police officers stopped the car. Officers searched the vehicle and found new electronic devices, a credit card embossing machine, and counterfeit credit cards--one of which had been used by Barnes earlier that day. Police took possession of the phone Awuah was carrying and later recovered messages from that phone, including an outgoing message stating, "this ofori this my new num," as well as messages containing credit card numbers used to place the fraudulent orders. J.A. 642-43. The four group members were transported to the police department, where they were placed under arrest.

## II.

Awuah was indicted in the Eastern District of Virginia on five counts: aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); access device fraud, in violation of 18 U.S.C. § 1029(a)(1); access device fraud--obtaining more than $1,000 in goods and services, in violation of 18 U.S.C. § 1029(a)(2); access device fraud--possession of device making equipment, in violation of 18 U.S.C. § 1029(a)(4); and

5

conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2).

Before trial, the government filed a Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 404(b). The government sought to present testimony from Officer Eric Hanidias of the Fairfax County Police Department concerning a prior, uncharged attempt by Awuah to defraud the Burke Commons Walmart in February 2013. After a hearing on the matter, the district court allowed the admission of this evidence, but directed the government not to refer to the February 2013 attempt in its opening statement. At trial, the district court instructed the jury that Officer Hanidias's testimony was offered to establish modus operandi, and explained that it could not be used to establish the character of the defendant.

At the close of the government's case, Awuah made a motion for judgment of acquittal based on insufficiency of evidence as to all five counts alleged in the indictment. The district court denied this motion, and the jury found Awuah guilty of all five counts. Awuah was sentenced to a term of twenty-one months' imprisonment on the counts of access device fraud and conspiracy to commit access device fraud, and a consecutive term of twenty-four months' imprisonment on the aggravated identity theft count. J.A. 764–66. This appeal followed.

III.

Awuah raises two issues on appeal. First, he contends that the evidence presented was insufficient to support the jury's verdict. Second, he contends that the district court erred in admitting testimony under Federal Rule of Evidence 404(b) concerning Awuah's involvement in the February 2013 attempt to defraud Walmart. We consider each issue in turn.

A.

An appellant challenging the sufficiency of the evidence "faces a heavy burden." Adepoju, 756 F.3d at 254 (quoting United States v. Young, 609 F.3d 348, 355 (4th Cir. 2010)). We view all evidence in the light most favorable to the prosecution and will reverse only where it is clear that the prosecution failed to provide substantial evidence which, "taking all inferences in the government's favor, could lead a rational jury to find the evidence sufficient for a conviction." Id. (citing United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996)).

Although Awuah does not challenge the sufficiency of the evidence with respect to any specific charge, in an abundance of caution, we consider his claim with respect to each of the five charges. We hold that the evidence presented at trial was insufficient to support Awuah's conviction for aggravated identity theft, but reject his argument with respect to the remaining charges.

7

1.

The government concedes, and we agree, that the evidence presented at trial was insufficient to support Awuah's conviction for aggravated identity theft. Under 18 U.S.C. § 1028A(a), a person commits aggravated identity theft if he or she "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person," "during and in relation to" the commission of one of several enumerated crimes. Of particular importance here, to sustain a conviction under this statute, the government must prove that the defendant knew the identification belonged to a real person. Adepoju, 756 F.3d at 256 (citing Flores-Figueroa v. United States, 556 U.S. 646, 647 (2009)).

Here, Awuah's indictment charged that he possessed and used a "license bearing number xxxx0613 belonging to [Winfred Mensah]" on October 25, 2013. J.A. 145. The government, however, presented no direct evidence that Awuah had ever used or possessed Mensah's identification at any time in connection with this criminal scheme. Instead, Requel Reyes, the cashier who assisted Awuah on October 25, 2013, testified that the man who picked up the relevant order used identification matching the primary name on that order, Edward Johnson. Further, the government did not introduce any evidence that Edward Johnson was a real person.

The government thus failed to prove that Awuah possessed or used identification belonging to a real person during or in relation to this scheme. Accordingly, we vacate Awuah's conviction on the aggravated identity theft count and remand for further proceedings consistent with this opinion.

2.

Next, we consider Awuah's various convictions of access device fraud and conspiracy to commit access device fraud. Because many of the essential elements of these three charges overlap, and much of the evidence is related, we consider these charges together.

To sustain a conviction of access device fraud, under 18 U.S.C. § 1029(a)(1), the government was required to prove that the defendant knowingly used a counterfeit access device, with the intent to defraud, and that the offense affected interstate commerce. A credit card number is an access device. See 18 U.S.C. § 1029(e)(1). Walmart surveillance footage, Reyes's testimony, and Walmart records proved that on October 25, 2013, Awuah picked up an order for an iPhone from the Burke Commons Walmart. This order had been placed online using a credit card number that had been stolen from an individual in Pennsylvania. Given that his name was not listed on that order, nor was his credit card used to pay for the phone, Awuah must have known that this order was fraudulent.

9

To sustain a conviction of access device fraud--obtaining more than $1,000 in goods and services, under 18 U.S.C. § 1029(a)(2), the government must prove the same elements listed above and additionally must prove that over the course of one year the defendant or a coconspirator used access devices to obtain goods valued at over $1,000. Barnes's testimony and Best Buy records established that on January 14, 2014, the day Awuah was apprehended by the police, the group knowingly and intentionally used stolen credit card numbers, stolen identification, and counterfeit cards to acquire four Apple iPads--each valued at $631.79--from a nationwide retailer.

To sustain a conviction of access device fraud--possession of device making equipment, under 18 U.S.C. § 1029(a)(4), the government must prove that the defendant knowingly, and with the intent to defraud, possessed equipment that could be used to make counterfeit access devices, and that the possession of the equipment was in or affecting interstate commerce. The government did so in this case. After apprehending Awuah's group, police searched the car in which the group was traveling and found several counterfeit credit cards on which false names and credit card numbers had been embossed, as well as the embosser used to create those cards. At least one of these cards was used to fraudulently acquire an iPad from a nation-wide retailer on January 14, 2014.

10

To sustain a conviction of conspiracy to commit access device fraud, under 18 U.S.C. § 1029(b)(2), the government must prove that the defendant was a party to a conspiracy to commit access device fraud, and some conduct in furtherance of the conspiracy occurred. Here, Barnes's testimony established that Awuah was involved in a conspiracy to commit access device fraud on January 14, 2014. This charge was further supported by evidence collected by the police during their search of the vehicle in which Awuah and his coconspirators were traveling-- particularly messages pulled from the phone Awuah was carrying that included credit card numbers used to place fraudulent orders.

Together, the evidence viewed in the light most favorable to the government is sufficient to support Awuah's convictions on each of the counts of access device fraud and conspiracy to commit access device fraud. Accordingly, we reject Awuah's sufficiency argument with respect to these counts.[2]

---

[2] In his brief Awuah argues that,

> [t]he prosecution simply failed to prove its theory that. . . Awuah had a business partner in Ghana who made online purchases. . . [or that he] owned the phone

containing credit card and order information at issue here. Appellant's Br. at 7-8. However, the government did not need to prove that Awuah had a Ghanaian partner or that he owned the phone he was carrying. The government presented sufficient
(Continued)

11

B.

Next, we consider Awuah's argument that the district court erred by admitting evidence of his February 2013 attempt to defraud Walmart under Federal Rule of Evidence 404(b). Rule 404(b) allows the admission of evidence of prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). We have held that the admission of 404(b) evidence is permissible where it meets the following criteria:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). We review the admission of 404(b) evidence under a deferential abuse-of-discretion standard. United States v. Williams, 740

---

evidence from which the jury could have found Awuah guilty of each of the counts of access device fraud and conspiracy to commit access device fraud.

12

F.3d 308, 314 (4th Cir. 2014) (citation omitted).  A district court has abused its discretion only where the admission of evidence was "arbitrary or irrational."  United States v. Haney, 914 F.2d 602, 607 (4th Cir. 1990).

The evidence Awuah challenges is testimony from Officer Hanidias that establishes the following.  On February 8, 2013, Awuah attempted to pick up an order that had been placed online using a stolen credit card number from the Burke Commons Walmart.  Before Awuah completed this transaction, Walmart employees discovered that the order was fraudulent and called the police.  Officer Hanidias responded to that call and questioned Awuah at the store.

In response to questioning, Awuah told Officer Hanidias that he came to the store to pick up an item that had been ordered for him by another individual.  Awuah told Officer Hanidias that he had been asked to resell the device online and split the profits from that sale with the individual who placed the order.  Officer Hanidias asked Awuah if he knew that the credit card number used to place the order had been stolen, and Awuah responded that he did not.

Awuah argues that this testimony was "not sufficiently related to the charged offense to render it adequately relevant to prove intent or knowledge."  Appellant's Br. at 11.  The

13

government counters that this evidence was necessary to establish modus operandi and intent.

We are satisfied that the district court did not abuse its discretion in admitting Officer Hanidias's testimony. The challenged evidence establishes that Awuah was previously caught engaging in substantially the same behavior for which he was subsequently charged, at the same store. It also establishes that Awuah was made aware at that time, just eight months before the first offense for which he was charged, that the order he was asked to pick up and resell had been placed using a stolen credit card number.

Of particular importance, we note that the district court issued an appropriate limiting instruction which fully explained the purpose of admitting Officer Hanidias's testimony, adequately addressing any concerns that the jury might inappropriately use this evidence. See, e.g., Queen, 132 F.3d at 997.

IV.

For the foregoing reasons, we vacate Awuah's conviction on the aggravated identity theft count, affirm in all other respects, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

14