NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0313n.06

No. 17-2132

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 25, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| KEEMAN BRIDGES, | ) | EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: GIBBONS, STRANCH, and BUSH, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Following a three-day trial, Keeman Bridges

was convicted on six counts from a seven-count indictment: one count of conspiracy to possess

fifteen or more counterfeit or unauthorized access devices, two counts of possession of fifteen or

more counterfeit or unauthorized access devices, one count of possession of device-making

equipment, and two counts of aggravated identity theft. At trial, Bridges moved for a directed

verdict of acquittal, which was denied. Now on appeal, he challenges the sufficiency of the

evidence for three of his convictions. Because we find that the evidence was sufficient for a

rational juror to find Bridges guilty beyond a reasonable doubt on each of the challenged

convictions, we affirm.

I.

Around 3:00 pm on January 10, 2016, police officers in Troy, Michigan stopped four

individuals in a Chevrolet Suburban with illegally tinted windows and an invalid license plate.

Troy Police Officer Endrit Fjolla approached the driver's side of the vehicle and asked the driver, later identified as Bridges, for his driver's license. Bridges explained that he did not have any identification, and when Fjolla asked the vehicle's other occupants for identification, all three failed to produce any. When asked for his name, address, and date of birth, Bridges gave a false name, Jamal Kenyatta Davis. Bridges also claimed the Suburban belonged to his cousin. Fjolla further asked Bridges where they were going, and Bridges replied that they were going to Somerset Mall. During his conversation with Bridges, Fjolla smelled a strong odor of marijuana coming from the vehicle and asked how much of the drug was in the car, to which Bridges replied "none, we just smoked it all." DE 47, Trial Tr. Vol. 2, Page ID 401–03. Following this exchange, Fjolla returned to his patrol car and called for backup to assist in impounding the vehicle and detaining its occupants.

After backup arrived, Bridges was placed in the back of a patrol car. While in the patrol car, Bridges received a call on his cell phone that was recorded by the car's dashboard camera in which he told the person on the other line that he and the other passengers "got flicked" while "in my truck" and "going to the mall." DE 47, Trial Tr. Vol. 2, Page ID 421–22; Video Recording, Gov't Exhibit 13 H, at 8:45–9:10.

Bridges was arrested and taken to the police station, where officers fingerprinted him and learned his real name. Police officers also conducted an inventory search as part of the process for impounding the Suburban. During the search, they found dozens of fraudulent credit cards,[1] thirty-one unactivated gift cards still in the packaging,[2] and twenty grams of marijuana. One of the fraudulent credit cards had the name "Khalil M. Wilson" embossed on it with the letters

---

[1] To determine if the credit cards were fraudulent, the officers ran them through a credit card reader. If the numbers on the front of the card did not match the information in the magnetic strip, the cards were fraudulent.

[2] As explained by Fjolla during his trial testimony, credit card counterfeiters often put stolen credit card information on the magnetic strips of blank gift cards to create fraudulent credit cards.

misaligned, and Wilson was later identified as one of the other passengers in the Suburban. Police officers also found an American Express credit card in the name of Frantisek J. Dostal, whose picture on the back of the card did not match the appearance of any of the occupants of the vehicle. On the impound report for the Suburban, Bridges listed his name as "Keeman Kavon Bridges" and his address as 16528 Mark Twain Street, Detroit, Michigan.

A little over a month later, on February 20, 2016, Detroit Police and the FBI searched 16528 Mark Twain Street in response to a reported shooting. In the house, officers found three AK-47 style assault rifles, a Wonder Manual Embosser machine, a MSR605 magnetic stripe card reader writer encoder (also known as a credit card skimmer), a Dymo label maker, a Lenovo laptop computer, an Apple MacBook computer, and twenty-nine fraudulent credit cards. Within the Lenovo laptop, officers discovered the information for 921 stolen credit card accounts, including one that matched one of the twenty-nine fraudulent cards found at the house. One of the files on the laptop contained information for almost 100 of the stolen credit card accounts and was named "Keemo," a nickname Bridges used on social media. In the home's kitchen, officers found a subpoena issued to "Keeman Bridges," and in a dresser in one of the bedrooms, officers also found a Club Metro card issued to "Keeman Bridges" and a fake Michigan driver's license issued to "LaParis Johnson" bearing Bridges's picture.

Bridges was not present at 16528 Mark Twain Street when it was searched, but the house's surveillance video showed him entering the residence earlier that day. Five days later, on February 25, 2016, FBI agents arrested Bridges in Taylor, Michigan. Bridges was taken to the police station in Redford, Michigan and, after being advised of his *Miranda* rights, agreed to be questioned by FBI agents. During his questioning, Bridges admitted owning the credit card embosser, credit card

skimmer, and the fraudulent credit cards discovered at 16528 Mark Twain Street, and he also admitted residing at that address.

On January 12, 2017, a grand jury charged Bridges in a seven-count indictment of one count of conspiracy to possess fifteen or more counterfeit or unauthorized access devices, two counts of possession of fifteen or more counterfeit or unauthorized access devices, one count of production of device-making equipment, one count of possession of device-making equipment, and two counts of aggravated identity theft. After the government rested its case, Bridges's counsel moved for a directed verdict of acquittal on all counts, which the district court denied. A jury subsequently acquitted Bridges on the charge for production of device-making equipment and convicted him on the six remaining charges. Bridges was sentenced to 154 months in prison. Bridges timely appealed.

## II.

The district court's denial of a motion for judgment of acquittal is reviewed *de novo*. *See United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016), *cert. denied*, 137 S. Ct. 79 (2016). In assessing the sufficiency of the evidence, the test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015) (citation and internal quotation marks omitted). This standard imposes "a very heavy burden" on defendants. *United States v. Barnes*, 822 F.3d 914, 919 (6th Cir. 2016) (citation and internal quotation marks omitted).

III.

On appeal, Bridges asserts there was insufficient evidence to support his convictions for conspiracy to commit access device fraud, possession of device-making equipment, and the count of aggravated identify theft relating to the fraudulent cards found in the Suburban. For the reasons addressed below, we affirm these convictions.

A.

Bridges was convicted of conspiracy to possess fifteen or more counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) and § 1029(b)(2). To sustain a conviction for conspiracy to commit access device fraud, the government must prove: (1) the existence of a conspiracy to possesses fifteen or more counterfeit or unauthorized access devices; (2) the defendant was a knowing party to the conspiracy; and (3) some conduct in furtherance of the conspiracy occurred. *United States v. Awuah*, 654 F. App'x 597, 601 (4th Cir. 2016); *see* 18 U.S.C. § 1029(a)(3), (b)(2). An "unauthorized access device" is an access device that is "lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3). A stolen credit card is an example of an unauthorized access device. *See United States v. White*, 296 F. App'x 483, 490 (6th Cir. 2008). A "counterfeit access device" is an access device that is "counterfeit, fictitious, altered, or forged . . . ." 18 U.S.C. § 1029(e)(2). An example of a counterfeit access device would be a gift card or credit card in which the magnetic strip has been re-encoded with information from a stolen credit card account. *See United States v. Kaba*, 568 F. App'x 882, 883 (11th Cir. 2014).

In this case, there was substantial evidence demonstrating Bridges's knowing participation in a conspiracy to possesses fifteen or more counterfeit or unauthorized access devices. Bridges was driving a vehicle with three other occupants in which police found dozens of fraudulent gift cards (including one which had been altered to include the name of one of the vehicle's

passengers), thirty-one blank precursor gift cards, and a stolen credit card issued to a man named Frantisek J. Dostal. Bridges's own recorded statements and answers to questions indicated that the vehicle belonged to him and that he was driving to Somerset Mall. From these facts alone, a jury could reasonably infer that Bridges was knowingly participating in a conspiracy to possess fifteen or more counterfeit or unauthorized access devices and was acting in furtherance of that conspiracy by driving himself and three other coconspirators to a mall with those counterfeit or unauthorized access devices to purchase goods using stolen credit card account information. And such an inference is sufficient to support his conviction. *See United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005) ("[A] defendant's knowledge of and participation in a conspiracy may be inferred from his conduct and established by circumstantial evidence." (citing *United States v. Salgado*, 250 F.3d 438, 447 (6th Cir. 2001))). But in addition to the evidence presented from the January 10, 2016 arrest, the jury was also presented evidence showing that twenty-nine additional counterfeit or unauthorized access devices were discovered one month later in a house that was identified as Bridges's residence through Bridges's own statements and other items found in the house. Accordingly, there was ample evidence from which a jury could convict Bridges of conspiracy to possess fifteen or more counterfeit or unauthorized access devices.

Bridges argues that the foregoing evidence was insufficient because "[t]here was never any testimony from a cooperating witness that would have established a conspiracy," and "there was no showing of any 'plan'" or other proof "from which intent to engage in [the] conspiracy"—rather than "mere acquiescence" to it—could be inferred. CA6 R. 22, Appellant Br., at 17, 21. However, testimony from a cooperating witness is not required to sustain a conspiracy conviction where, as here, other evidence sufficiently establishes the elements of the crime. Further, the evidence showing that Bridges owned the Suburban, was the driver of the vehicle, and resided at

the home where the counterfeit or unauthorized access devices were found, is sufficient to infer his active participation in, rather than mere acquiescence to, the conspiracy. Therefore, we affirm Bridges's conviction for conspiracy to possess fifteen or more counterfeit or unauthorized access devices.

B.

Bridges was convicted of possession of device-making equipment in violation of 18 U.S.C. § 1029(a)(4). To sustain a conviction for possession of device-making equipment, the government must prove: (1) the defendant knowingly possessed device-making equipment; (2) the defendant acted with intent to defraud; and (3) the possession of the equipment was in or affecting interstate commerce. *Awuah*, 654 F. App'x at 601; *see* 18 U.S.C. § 1029(a)(4); *see also* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 8.87 (2010 ed.). "Device-making equipment" is defined as "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(6). Examples of device-making equipment include credit card embossers or other devices used to produce counterfeit credit cards. *See United States v. Morris*, 81 F.3d 131, 133 (11th Cir. 1996).

Here again, there was substantial evidence for each element of the crime from which a rational jury could convict Bridges beyond a reasonable doubt. At the 16528 Mark Twain Street house—which Bridges listed as his address on the impound report and in which police discovered a subpoena and a Club Metro card issued in his name and a fake Michigan driver's license bearing his picture—police found a laptop containing stolen credit card information, a credit card embosser, a credit card skimmer, and a label maker along with numerous fraudulent credit cards. Bridges subsequently admitted owning the embosser, skimmer, and the fraudulent credit cards discovered at the 16528 Mark Twain Street house. He also admitted residing at that address. Accordingly, by his own admissions, Bridges knowingly possessed device-making equipment, and

7

this knowing possession is further supported by the fact that the equipment was found in his home. Moreover, the presence of fraudulent credit and gift cards throughout the residence as well as a laptop containing stolen credit card information—including information stored in a file bearing Bridges's social media nickname "Keemo"—provide sufficient evidence to show Bridges possessed this equipment with the intent to commit fraud.

Bridges's sole argument for why the evidence was insufficient to support his conviction for possession of device-making equipment was that other persons had access to the 16528 Mark Twain Street house where the device-making equipment was found. But possession need not be exclusive and may be joint, so the mere fact that others might have had access to the equipment does not preclude finding that Bridges possessed the equipment. *United States v. Houston*, 813 F.3d 282, 295 (6th Cir. 2016). Further, a defendant may have constructive possession of an item if he or she exercises "dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (emphasis omitted) (quoting *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996)). Here, not only did Bridges admit he owned some of the device-making equipment, but all the equipment was found in his home. Accordingly, there was sufficient evidence for a jury to find Bridges possessed the device-making equipment. *See United States v. Malone*, 308 F. App'x 949, 952 (6th Cir. 2009) ("This court has repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom or personal living space."). Therefore, we affirm Bridges's conviction for possession of device-making equipment.

## C.

Bridges was also convicted of two counts of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1). However, he challenges only the sufficiency of the evidence for the count relating to the contraband found in the Suburban. To sustain a conviction of aggravated

identity theft under 18 U.S.C. § 1028A(a)(1), the government must prove: (1) the defendant knowingly transferred, possessed, or used the means of identification of another person; (2) the means of identification belonged to another person; (3) the means of identification was used knowingly without lawful authority; and (4) the means of identification was used during and in relation to wire fraud or access device fraud. *United States v. Adkins*, 372 F. App'x 647, 653 (6th Cir. 2010). A "means of identification" is defined as a "name, social security number, date of birth, . . . government issued driver's license or identification number, . . . passport number," or any similar "name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). A credit card account number is a "means of identification," *see United States v. Lin*, 508 F. App'x 398, 401–02 (6th Cir. 2012), as are the credit card account holder's name and other identifying information, such as date of birth, *see United States v. Johnson*, 716 F. App'x 169, 171 (4th Cir. 2018).

Bridges's sole argument about insufficiency of the evidence to convict him of aggravated identify theft is that other individuals were in the Suburban where the stolen and fraudulent credit cards were found, and therefore, the government failed to show he had "direct possession" of these cards. Again, however, direct exclusive possession is not required; rather, constructive joint possession is sufficient to sustain a conviction. *See Houston*, 813 F.3d at 295.

Further, there was in fact sufficient evidence for a jury to convict Bridges of aggravated identity theft based on the stolen and fraudulent credit cards found in his vehicle. At trial, two victims testified. First, Frantisek J. Dostal—owner of the American Express credit card with his picture on the back—testified that the card was his actual credit card and that he did not give Bridges permission to use or possess the card. Dostal also testified that he discovered several charges on the card that he had not made or authorized. Second, Clarence Robertson—whose

credit card information police found encoded onto the magnetic strip of one of the fraudulent gift cards found in the Suburban—testified that there had been fraudulent charges on the credit card account encoded onto the gift card and that he had never given Bridges permission to use or possess his credit card information. Dostal's stolen American Express card was found under the driver's seat of the Suburban where Bridges had been sitting, and the card bearing Robertson's account information had been found in the back of the vehicle. Additionally, several other fraudulent cards were found in the center console between the driver's seat and the front passenger seat.

Perhaps, in some circumstances, Bridges's mere presence in the same vehicle as the stolen and fraudulent cards would be insufficient for a rational jury to find that he knowingly possessed another person's means of identification. *See United States v. Bailey*, 553 F.3d 940, 946 (6th Cir. 2009) (finding failure to show knowing possession of a firearm when a loaded gun was found underneath defendant's seat in the *stolen* car he was driving when defendant testified that he was unaware of the gun, defendant's fingerprints were not found on the gun, and other individuals had used the car on the night defendant was arrested and in the days before). "But other incriminating evidence, along with the defendant's presence in the car, may 'tip the scale in favor of sufficiency.'" *United States v. Harris*, 600 F. App'x 985, 988 (6th Cir. 2015) (quoting *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc)). Here, Bridges was not only the driver of the Suburban, but by his own admission was the owner of the vehicle, and Dostal's American Express card was located under his seat while several other fraudulent cards were within arm's reach in the center console. *See id.* (finding the driver's ownership of the car, close proximity to the contraband, and being the sole occupant to be sufficient incriminating evidence to "tip the scale"). Moreover, other circumstantial evidence indicates Bridges knew of and constructively possessed the stolen and fraudulent cards in the Suburban, including his statements

about going to Somerset Mall (where the jury could infer a motive to use the cards to purchase goods illegally), his initially lying about ownership of the vehicle and providing a false name to police, and the presence of access device-making equipment, more fraudulent cards, and stolen account information in his home. *See United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) ("Other incriminating evidence," such as a "connection with [the contraband], proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise," along with close proximity, may "tip the scale in favor of constructive possession." (quoting *United States v. Newsom*, 452 F.3d 593, 610 (6th Cir. 2006))). Therefore, we find there was sufficient evidence for a jury to conclude that Bridges constructively possessed the means of identification on the stolen and fraudulent cards found in the Suburban. The testimony of Dostal and Robertson, moreover, is sufficient for the jury to conclude that the stolen credit cards were used in the course of access device fraud, as it showed that multiple fraudulent purchases had been made with the cards in Bridges's possession. Accordingly, we affirm Bridges's conviction for aggravated identity theft.

IV.

For the above reasons, we affirm Bridges's convictions on all counts.

11